Okay. Are we ready? The next argued case is number 19-1565, General Access Solutions, Ltd. v. United Patents, LLC. Mr. Taylor, proceed. Good morning, Your Honor, and may it please the Court. The PTAB majority erred by adopting an incorrect construction of the claim term wireless local area network transceiver in the 555 patent. The PTAB majority's construction effectively reads out the words local area network, especially the network part of that term. At the time of the invention of the 555 patent, a local area network, or a LAN for short, was a well-known term of art in the field, as was a wireless LAN or a WLAN. As the specification teaches, a skilled artisan would have understood a LAN to mean a network that interconnects devices and allows them to communicate with one another on the LAN. As the dissenting judge, Judge Stevens, at the PTAB put it succinctly at Appendix Page 56, a defining characteristic of a network is the ability for devices to communicate with each other within the network. That essential requirement is absent from the PTAB's construction, which makes it incorrect. Now, with the correct construction of wireless local area network transceiver, the PTAB majority's decision should be reversed. The Hohenstein reference on which the PTAB majority relied does not disclose a WLAN transceiver because it does not disclose the creation of a WLAN on which devices can communicate with each other without having to send signals into the larger network. We therefore respectfully request that this court reverse the PTAB majority's decision. Turning first to claim construction, the PTAB majority construed the term WLAN transceiver to mean, quote, a transceiver that transmits and receives wireless signals and defines a coverage area that is relatively small or geographically limited. Counsel, this is Judge Stoll. Earlier in your introduction, you said that the majority had the word WLAN in transceiver, but in that definition you just read to us, didn't they include that it has to define a coverage area that is relatively small or geographically limited? Isn't that giving some meaning to the word WLAN? I think it's giving... I apologize, Your Honor. I didn't mean to cut you off. Was there a second part to your question? No. No, there's not. Please proceed. Yes, Your Honor. It gives half of the WLAN. The patent teaches... The specification and all the evidence about what the term was understood in the art to mean indicated that a WLAN had two essential components. The first is that it's geographically limited, and that is accounted for in the PTAB's construction. But the second equally essential component of what a WLAN required is the network component, which is that it provides the ability for devices on the WLAN to communicate with each other on the network. That is the essential... Counsel, this is Judge Stoll again. I've read the claim language, and I've read the specification, and I don't see anything in either of those two pieces of intrinsic evidence that says that the devices need to be interconnected. I respectfully disagree, Your Honor. I would first, in terms of the specification, refer, Your Honor, to the background section of the patent. Column 5 lines... Well, excuse me. In the background section in general, in column 4, line 60 to 65, the patent teaches that WLAN is a WLAN. Column 5 lines, I believe it's 8 to 11, it teaches that an essential component of a local area network is the interconnection that I mentioned. And I'll just quote the language of the specification. It says, quote, in some such systems, the access points are coupled to a conventional local area network also used to interconnect the processing stations of an I mean, that doesn't seem to be essential then, that it says in some such. Well, Your Honor, I think the in some such systems is referring further up in the background section where it's talking about wireless communication systems generally. So, the in some such is not referring to local area networks, which comes later in the sentence. What the sentence says is that in some such systems, meaning wireless communication systems generally, the access points can be coupled to a conventional local area network also used to interconnect. So, again, there in the background, it's teaching that when it comes to a local area network, the interconnection is an essential component of it. And again, Your Honor... Yes. Oh, I'm sorry, Your Honor. I was just going to ask if you thought this was your best evidence in the specification to support your position, or do you have other sections of the patent specification that you would like to identify for me? Yes, Your Honor. I'd also refer the court to the claims. The claims require that the local area network transceiver is in direct wireless broadband communication with a plurality of computing devices. So, it teaches that the transceiver actually forms communication links with not one, but a plurality of devices. The specification teaches numerous times that those connections are wireless local area network LAN connections. Just for example, at column eight, lines 44 to 47, and column nine, lines 53 to 55. And then the specification also teaches that the invention provides, quote, WLAN service to the mobile devices in the coverage area. And that's taught at column 11, lines 41 to 43. Can I interrupt you one more time? I just want to ask, I'm looking at the claim language you're referring to. And also, in the specification, it really seems to talk about the wireless local area network transceiver being in communication with a computing device within the LAN, and then allowing it to communicate outside of the LAN to one of the base stations. Am I incorrect in understanding that? You're correct, Your Honor, that that is what the focus of the claims is on. But as the dissenting judge, Stephen, at the PTAB, explained this very clearly in the first few pages of his opinion, the focus of the claim and the invention is on coupling these two kinds of communications networks, which are claimed in the 555 patent. And those two networks are in communication with a terrestrial base station, which creates a larger network. And then it describes a smaller WLAN transceiver. And it's also illustrated at figures five and six of the patent, which shows the two kinds of coverage areas which are overlapping. So, the invention of the patent is focused at coupling those two kinds of networks, and allowing a mobile station that is in the WLAN to communicate with devices that are out into the larger network. But as the PTAB dissent explained, in coupling the two networks, nothing in the patent indicates that those two networks' status and identity as separate and identifiable networks is lost. Much to the contrary, the patent teaches that the WLAN transceiver forms a WLAN that provides WLAN service. As I was mentioning, Your Honor, there's the teaching in the background that a basic component of a local area network is to interconnect devices on the network. And again, Your Honor, the patent is teaching against the backdrop that a LAN and a WLAN was a well-known term of art in the field. So, I do just want to make sure that we talk briefly about the evidence that was in the record before the PTAB about what that term of art meant to a person of skill. Because on that question, the evidence is unanimous. All of the evidence before the PTAB about what a LAN or a WLAN was understood to mean at the time of the invention indicates that it must have as an essential component the ability to connect devices on the network to each other. We cited, Your Honor, three technical dictionaries from the relevant timeframe, the mid to late 1990s, to the PTAB, all of which are unanimous on this point. For example, the Microsoft Press Computer Dictionary defined a LAN as a group of computers and other devices dispersed over a relatively limited area and connected by a communications link that enables any device to interact with any other on the network. I think it's notable, Your Honor, that neither Unified nor the PTAB cited a single dictionary, a technical dictionary definition to the contrary. But let's go back to the claim. Where do you say that we pick up on the point you're trying to make that all of the devices within the LAN can communicate with each other within the network? Yes, Your Honor. Again, I think it's inherent in the term wireless local area network transceiver. So that's right there in the claim. The claim then goes on to say that the transceiver, it's not just there doing nothing, it actually forms connections with a plurality of mobile devices in the coverage area. So I think that when you have a proper understanding of the term WLAN, and again, the specification teach that the transceiver forms WLAN connections and provides WLAN service to those plurality of mobile stations. Doesn't the specification when it does that, it indicates that only multiple computing devices communicate with an access point on the LAN or the WLAN transceiver. But how do we get to the point of your argument that that also means that all devices can communicate with each other within the network? Again, Your Honor, it's inherent in the words wireless local area network transceiver, especially wireless local area network. The ability for the devices on the local area network to communicate with one another is what makes it a wireless local area network. And again, as I've been discussing, that is taught in the is an essential component of a local area network. And again, all of the evidence about what the term of our LAN or WLAN would have meant to a person of skill in the art is to the same effect. There's not a single... Mr. Taylor, I'm going to interrupt you for a minute. This is Judge Stoll again. So one question I have, and you have a difficult hurdle to get over here because the board found repeatedly, the majority found, contrary to what you're saying, that in fact, an essential feature of a WLAN transceiver does not include interconnecting the mobile stations within the LAN. I expressly found that in cited evidence, and this is like pages A19, A20, A21, 22, and I think even on page A17 and A18, a very detailed discussion from the majority here. What do you think is a standard of review that applies to that for us? I think it's a standard of review. Your Honor, it's de novo review to the question of whether the board's findings are consistent with the specification and the claims. And on that question, as I've been discussing, we think the specification teaches that interconnectivity, again, in column five is an essential component of a LAN and that the claims and the rest of the specification drive that point home. So it's de novo review as to the Yes. I agree with you, counsel. I agree with you that it's de novo review of the ultimate claim construction and of the intrinsic evidence. But for extrinsic evidence, don't we have to give deference to the board's findings on extrinsic evidence consistent with Supreme Court precedent? Yes, Your Honor. I agree that as to extrinsic evidence, it's a substantial evidence standard of review. But again, we think the board failed at the first step because it's inconsistent with the claims and the specification. But the board's reasoning also failed at the second step because under a substantial evidence review, you have to look at the evidence. And as I was describing, 100 percent, all of the evidence in the record about what the term would have meant indicates that connectivity amongst the devices on the network was an essential required component. I would just note that the board's reasoning is based on an incorrect analysis in large part of a straw man argument, which was that the board seemed to be understanding us to argue that... Is that the beep? It is. Complete your thought. May I? Okay. The board was analyzing an incorrect view of what it thought we meant by direct connectivity, which the board thought meant that a device spoke... That the communication went from device to device. And the board was correct that that was not understood to be an essential part of a LAN or a WLAN at the time of the invention, but that is not what we were arguing. And again, the PTAB dissenting judge understood what our position was, which was that we were arguing that an essential component of a LAN or a WLAN was that the devices be able to communicate with one another on the network without having to go out into the wider network. All right. Anything else from the panel at this point? Good. We'll save the rebuttal time and let's hear from Mr. Amadi. Good morning, Your Honor, and may it please the court. My name is Brittany Amadi. My name is Amadi. No problem, Your Honor. I represent Apelli Unified Patents. This appeal turns on a single claim limitation, wireless local area network transceiver or WLAN transceiver. I'll first address GAS's argument that the proper construction of that term requires that the transceiver connect devices without those communications leaving the network. And then I'll then address and explain why the board correctly found that the home scene reference discloses a WLAN transceiver. GAS's arguments for overturning the board construction of WLAN transceiver should be rejected for at least three reasons. First, the board's construction is firmly grounded in the intrinsic record. Pointing to the claims and the specification, the board correctly found at Appendix 11 that a transceiver is a device that can both transmit and receive signals and then explained that the 555 patent specification describes the WLAN transceiver as a transceiver that, quote, defined the WLAN coverage area. The board then concluded that the specification made clear that the WLAN coverage area defined by the WLAN transceiver was relatively small. Finally, the board found that several extrinsic dictionary definitions of a local area network were consistent with the intrinsic record as they each defined a local area network as having a coverage area that is limited, relatively limited, and small at Appendix 12 and 13. The board construction was as fully consistent with the intrinsic record as well as the construction of WLAN transceiver that GAS itself originally proposed in its Patent Owner Preliminary Response. This is Judge Stoll. I wanted to ask you to respond to some of the excerpts from the specification that Mr. Taylor discussed. He discussed one that was from the background of the invention, and then also I believe that he cited some language in Column 12 about how WLAN services provided in a fixed wireless access communication system. And I just wanted to have your thoughts on the strength of those discussions. Yes. Thank you, Your Honor. Both of the passages on which GAS pointed the court this morning do not require that the wireless local area network transceiver interconnect devices or facilitate communications between those devices without the communications leading the network. And that's for two reasons. One, the passage on which GAS relies merely indicates that there is an interconnection between devices, but it says absolutely nothing about whether or not those devices must communicate without the communications leading the network, which is the critical aspect of GAS's proposed construction. And second, even if it were the case that a wireless local area network requires communication to happen between devices within the network without leaving the network, something that the board explicitly rejected, even if that were true, there's nothing in the intrinsic record that would require a WLAN transceiver to facilitate those communications as opposed to other devices within the network. And the board found that repeatedly in its decision in rejecting the arguments that GAS is now raising. So, simply put, there's nothing in the intrinsic record that requires a WLAN transceiver to facilitate communications between devices in the network without those communications leaving the network. The other information to which GAS points is extrinsic evidence. But as Your Honor pointed out, the board explicitly rejected that extrinsic evidence. And I believe Counsel Mr. Taylor stated that the extrinsic evidence was unreported, but that's simply not true. While GAS relies heavily on one of the dictionaries that it submitted, there were other dictionaries in the record to which the board pointed that contradicted its position. For example, the IBM Dictionary of Computing, which is at Appendix 1462, defines a local area network as a computer network located on a user's premises with a limited geographical area. The board's construction was fully consistent with that dictionary definition. It makes no mention of communications being direct or requiring that communications to occur without leaving the network. In addition, the board was well within its authority to reject the extrinsic evidence on which GAS relies. The board made several factual findings regarding GAS's extrinsic evidence, and each of those findings are entitled to deference. For example, the board found that there was no- that Mr. Strusaker's testimony, which was the primary evidence on which GAS relies below, was, quote, bare and not supported by corroborating evidence. And that finding is particularly supported, given that Mr. Strusaker was not an uninterested mutual party, but was the sole aimed inventor on the 555 patent. Moreover, Mr. Strusaker's testimony was not unrebutted as GAS claims. Unified Statements relied on the testimony of its own expert, Dr. Michael Kotson, who disputed Mr. Strusaker's claims regarding the scope of wildland fever. Mr. Kotson explained that a skilled artisan would have understood that the local area network is a network limited in geographical scope. And again, that was consistent with the position that GAS took in its patent owner preliminary response. So, I'd like to turn, if the court has no questions- further questions on the claim construction issue, to the merits of whether Holmsteen discloses, and whether the board's decision that Holmsteen discloses a wildland trans-fever was supported by substantial evidence. On that issue- It might be helpful, Mrs. Donahue-Ivatti, to consider, in order to full attention to the more restricted claim construction that Mr. Taylor has been proposing, how the board's decision would apply, or if it would apply, to the claim construction that's being proposed. Yes, Your Honor. So, I'll take that in two parts. I think GAS has made two arguments with respect to whether or not Holmsteen discloses a wildland trans-fever. And first, GAS argues that the board's conclusion that Holmsteen discloses a wildland trans-fever was not supported because there's no evidence that it discloses a network that is relatively small or geographically limited. So, I'll address that first. And then the second point that GAS makes is that under its proposed construction, that the but both of those arguments are incorrect. With respect to the first, it's simply incorrect that Holmsteen is silent about the relative size of the network formed by Holmsteen's access points. Holmsteen explains throughout that its wireless communication system includes access points where each access point includes at least one antenna for communicating with the wire subscriber unit. Holmsteen further explains that each access point, and this is at Appendix 347, Column 4, Lines 12 through 14, defines a coverage area 24, such as, for example, a cell. Holmsteen then explains that access point may be, for example, a local radio access point at that the coverage area defined by the access point may be a single region resulting from the use of an omni-directional antenna, and that the coverage area defined by the access point is self-supporting, relatively small, and adaptable to a wide variety of wireless applications. There was ample record support to support the board's conclusion that Holmsteen discloses a coverage area that is relatively small and geographically limited. Now, with respect to the other argument that DAS makes, that a finding in their support that Holmsteen, that the claim construction would require the wireline transceiver to facilitate communication without those communications leaving the network, a position with which Unified Patents disagrees, at most, a remand would be required on that issue. If the court were to agree with DAS's proposed construction, as we noted in our brief at page 32, note 5, even were this court to conclude that DAS's construction were correct, the board should have construed that the board should have construed wireline transceiver to require communication between devices without leaving the network. As Unified Patents explained before the and that's at appendix 2432 to 2436. However, as he's explained, under the board's correct interpretation of the claim, the board's findings that all claims of the 555 patent are unpatentable should be affirmed and are more than supported by substantial evidence. If there are no further questions from the panel, I will cede the remainder of my time. Okay. Any questions from the panel? No questions. Thank you. Okay. Thank you, Ms. Ahmadi. Thank you, Your Honor. Okay. Thank you. Mr. Taylor, you have your rebuttal time. Thank you, Your Honor. Just to recenter the discussion that we've been having, the term is wireless local area network transceiver. And of course, as the court knows, a proper claim construction must give effect to every word in that term. At most, the PTAB's construction gave effect to the word transceiver and to the word wireless local area in its description of a coverage area that is relatively small or geographically limited. But the fatal flaw with the PTAB majority's construction is that it does not give meaning to the word network. As the PTAB dissent explained, the basic function of any network is to connect devices on the network and allow them to communicate with one another. But that concept of a network is completely absent from the PTAB majority's construction. Therefore, because the construction fails to give effect to every word in the term and also is contrary to the teachings in the PTAB, the construction should be rejected by this court. The correct construction is the one that was offered by or adopted by the dissenting judge at the PTAB, Judge Stevens. Judge Stevens recognized that a correct construction of WLAN transceiver recognizes both that the transceiver must actually create a WLAN and second, that the WLAN created by the transceiver must function as any WLAN would as understood by a person of skill in the art, which again is to provide interconnectivity amongst devices on the WLAN. Now turning to Judge Newman's question about how this court should read the Holmsteen reference using the correct claim construction that we are advocating and which the PTAB dissenting judge adopted. Holmsteen, if the court adopts the correct construction, which it should, the proper result is to reverse the PTAB because there really is no dispute that the Holmsteen reference does not teach the creation of a separate wireless local area network that allows devices on the network to communicate with one another. Counselor, this is Judge Reynolds. Do you dispute that whether or not Holmsteen discloses every limitation of the claims 1 through 20 of the 555 patent? I'm sorry, Your Honor, I missed part of the question. It's whether I dispute that it discloses every element? Nearly every limitation, yes. The limitations of claims 1 through 20. Your Honor, we dispute and disagree that Holmsteen discloses the term that we've been discussing, the wireless local area network transceiver. We are not, for today's purposes, disputing whether Holmsteen discloses the other elements in claims 1 through 20, but we do not agree that Holmsteen discloses the wireless local area network transceiver, again, because Holmsteen simply does not describe the creation of a separate layer of network, the smaller wireless local area network. Instead, as we explained in our brief, and as the dissenting judge at the PTAB correctly recognized, Holmsteen is all about extending one layer of network, a mesh network, whereas the 555 patent, with the term WLAN transceiver properly understood, is about connecting two different kinds of networks. Now, I just want to briefly note, the counsel mentioned an alternative argument about Holmsteen rendering this construction obvious. I want to note that, Your Honor, may I briefly finish my answer? Yes, finish your thought. I just want to briefly note that the PTAB dissenting judge considered that argument at the end of his opinion. He explained it was procedurally defaulted because it was made for the first time in reply, and also that it failed on the merits because it failed to explain why a person of skill would have been motivated to fundamentally alter Holmsteen to create the second layer of network that is required by a correct construction of the term WLAN transceiver. Mr. Taylor, this is Judge Stoll. I had one last quick question, which is that I did not see where the board made any alternative fact findings under your proposed construction that you're advocating before us today. Do you agree with that? I agree that the PTAB majority did not. What I was referring to was in the PTAB dissenting opinion. Okay, but we have to look to the PTAB majority opinion for the findings of fact, right? Yes, Your Honor. Okay, thank you. Thank you, Your Honor. We respectfully request that this court reverse the PTAB. Okay, thank you both. The case is taken under submission.